TO: Clerk's Office
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**



### APPLICATION FOR LEAVE TO FILE DOCUMENT UNDER SEAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN THE MATTER OF THE SEARCH OF THE
CELLULAR TELEPHONE ASSIGNED CALL
NUMBER (347) 600-0378

20-MC-1105
Docket Number

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✓
Name: Rachel A. Shanies
Firm Name: USAO-EDNY
Address: 271 Cadman Plaza East
Brooklyn, New York 11201
Phone Number: 718-254-6140
E-Mail Address: rachel.shanies@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES____ NO ✓
**If yes, state description of document to be entered on docket sheet:**

_____
_____
_____

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

ongoing investigation
_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn, NEW YORK
5/19/2020

_____
**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE 5/19/2020
DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ____ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ____ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation: _____; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

5/19/2020                       *Rachel Shanies*
DATE                            SIGNATURE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (347) 600-0378 | Case No. 20-MC-1105<br><br>**Filed Under Seal** |

Denied for lack of probable cause without prejudice to resubmit with additional facts. SO ORDERED.

*/s/ Steven M. Gold*

Steven M. Gold
USMJ
05-19-2020

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Steven Kaplan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (347) 600-0378, with listed subscriber(s) "Country, Country" (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the United States Attorney's Office for the Eastern District of New York, and have been since 2009. Prior, I was a law enforcement officer with the

New York City Police Department (the "NYPD") from 1985 through 2009, including a period of time in the NYPD (i) robbery task force from 1986 through 1988, (ii) narcotics division from 1988 through 1993, and (iii) cold case squad from 1994 through 2009. I have been involved in the investigation of numerous cases involving the illegal trafficking, distribution, and possession of narcotics, as well as numerous cases involving gun possession and gun violence, including gun homicides and robberies involving firearms. I have also received training on the uses and capabilities of cellular telephones in connection with criminal activity.

4. The facts in this affidavit come from my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by RICHARD JACKSON, together with his co-conspirator JAMAL OMARO, and other unknown individuals, and that violations of Title 18, United States Code, Sections 922 and 924 are being committed and will be committed by JACKSON. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7. The United States, in conjunction with the NYPD, is conducting a criminal investigation of RICHARD JACKSON, JAMAL OMARO, and other unidentified subjects regarding possible violations of Title 21, United States Code, Sections 841 and 846, and Title 18 United States Code, Sections 922 and 924.

### Undercover Drug Buys

8. On March 4, 2020, at approximately 3:00 p.m., an undercover officer working for the NYPD ("UC-1") contacted RICHARD JACKSON, also known as "Country," by reaching out to the Target Cell Phone seeking to purchase a quantity of crack cocaine. JACKSON provided UC-1 with a time and location to meet JACKSON's friend. Specifically, JACKSON directed UC-1 to meet the friend at a supermarket at 1351 Forest Avenue, Staten Island, New York 10302, located within the Eastern District of New York (the "Forest Avenue Market"). At approximately 4:55 p.m., JACKSON contacted UC-1 from the Target Cell Phone and directed him to meet the friend, later identified by UC-1 through a photo array as JAMAL OMARO, in the bathroom of the Forest Avenue Market.

9. UC-1 proceeded to the bathroom and purchased approximately 0.857 grams of crack cocaine from JAMAL OMARO in exchange for $100USD.

10. On March 12, 2020, at approximately 12:45 p.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON provided UC-1 with a time and location to meet JACKSON's friend. Specifically, JACKSON directed UC-1 to meet JACKSON's friend at the Forest Avenue Market. At approximately 1:43 p.m., JACKSON contacted UC-1 from the Target Cell Phone and directed

him to go into the bathroom to meet with his friend, who has been identified as JAMAL OMARO.

11. UC-1 proceeded to the bathroom and purchased approximately 0.816 grams of crack cocaine from JAMAL OMARO in exchange for $100USD.

12. On March 17, 2020, at approximately 12:00 p.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at 1 Davis Avenue, Staten Island, New York 10310, located within the Eastern District of New York (the "Davis Avenue Location"). At approximately 12:47 p.m., JACKSON's friend, who has been identified as JAMAL OMARO, parked a gray Cadillac Escalade with license plate HKF3434 (the "Omaro Car") in front of UC-1's vehicle. UC-1 entered the passenger side of the Omaro Car and was provided approximately 0.752 grams of crack cocaine in exchange for $100USD.

13. On March 25, 2020, at approximately 12:10 p.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at the Davis Avenue Location. At approximately 12:53 p.m., JACKSON's friend, who has been identified as JAMAL OMARO, driving the Omaro Car, parked in front of UC-1's vehicle, stood by the passenger side of UC-1's vehicle, and provided UC-1 with approximately 0.654 grams of crack cocaine in exchange for $100USD.

14. On April 1, 2020, at approximately 11:55 a.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at

the Davis Avenue Location. At approximately 1:33 p.m., JACKSON's friend, who has been identified as JAMAL OMARO, driving the Omaro Car, parked in front of UC-1's vehicle. UC-1 entered the passenger side of the Omaro Car and OMARO provided UC-1 with approximately 0.833 grams of crack cocaine in exchange for $100USD.

15. On April 9, 2020, at approximately 10:16 a.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at the Davis Avenue Location. At approximately 11:52 a.m., JACKSON's friend, who has been identified as JAMAL OMARO, driving the Omaro Car, parked in front of UC-1's vehicle. The two then went to the corner of Delafield Place and Davis Avenue in Staten Island, New York. OMARO stood by the passenger side of UC-1's vehicle and provided UC-1 with approximately 1.327 grams of crack cocaine in exchange for $100USD.

16. On April 15, 2020, at approximately 10:33 a.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. Later that morning JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at the Davis Avenue Location. At approximately 11:59 a.m., JACKSON's friend, who has been identified as JAMAL OMARO, driving the Omaro Car, parked in front of UC-1's vehicle. The two then went to the corner of Delafield Place and Davis Avenue in Staten Island, New York. OMARO stood by the passenger side of UC-1's vehicle, and provided UC-1 with approximately 0.760 grams of crack cocaine in exchange for $100USD.

17. On April 22, 2020, at approximately 3:15 p.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at

the Davis Avenue Location. At approximately 3:27 p.m., JACKSON's friend, who has been identified as JAMAL OMARO, arrived as the passenger in a silver Dodge pickup truck with New York license plate number GDE5357 (the "Dodge Pickup Truck"), which was then parked in front of UC-1's vehicle. OMARO entered the passenger side of UC-1's vehicle and provided UC-1 with approximately 0.760 grams of crack cocaine in exchange for $100USD.

18. On May 12, 2020, at approximately 2:35 p.m., UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to arrange the purchase of a quantity of crack cocaine. JACKSON informed UC-1 that JACKSON would send a friend to meet UC-1 at 450 Bay Street, Staten Island, New York 10304, located within the Eastern District of New York (the "Bay Street Location"). A Dunkin' Donuts is located at the Bay Street Location. At approximately 3:52 p.m., JACKSON's friend, who has been identified as JAMAL OMARO, arrived as the passenger in the Dodge Pickup Truck, which was then parked on the passenger side of UC-1's vehicle. OMARO entered the passenger side of UC-1's vehicle and provided UC-1 with approximately 0.722 grams of crack cocaine in exchange for $100USD.

19. In advance of each purchase, UC-1 contacted RICHARD JACKSON by reaching out to the Target Cell Phone to set a time and location to meet.

20. In addition, UC-1 and RICHARD JACKSON have discussed the purchase of a firearm. JACKSON informed UC-1 that he was going to the "South." Prior to JACKSON's departure for his trip to the South, UC-1 asked JACKSON if he could bring back a firearm for UC-1. JACKSON agreed to do so. During the March 25, 2020 exchange, JAMAL OMARO

informed UC-1 that JACKSON was bringing back three firearms from the South. Both JACKON and OMARO have prior felony convictions.[1]

Prior Search Warrant

21. On March 10, 2020, Judge Mario F. Mattei of the Richmond County Supreme Court authorized for a period of sixty-days "installation and use of a pen register, trap-and-trace device, caller identification devices, and delivery of real-time cell site and GPS information" on the Target Cell Phone. That installation has since expired. Detective Philip Vaccarino of the NYPD has advised me that information obtained pursuant to the previous Order furthered the investigation by providing information regarding communications to and from the Target Cell Phone on the dates and at the times of undercover drug buys as set forth above.

22. In addition, GPS data obtained from the prior search warrant showed that the Target Cell Phone was located in Florida where UC-1 understood RICHARD JACKSON to be. It also showed that the Target Cell Phone was located in the same vicinity as a second phone that is believed to belong to JACKSON, and is believed to be used by JACKSON to communicate with JAMAL OMARO.

23. UC-1 intends to continue making purchases of narcotics from RICHARD JACKSON.

---

[1] Upon information and belief, RICHARD JACKSON remained in Florida longer than he originally planned in light of COVID-19, but has since returned to New York after the expiration of the prior GPS warrant referenced below.

Conclusions

24.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

25.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available.

26.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1)

the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

27. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

28. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

9

29. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

30. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*steven kaplan*

Steven Kaplan
Special Agent
United States Attorney's Office, EDNY

Subscribed and sworn to before me by telephone on May ___, 2020

_____
Honorable Steven M. Gold
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone assigned call number (347) 600-0378, with listed subscriber(s) "Country, Country" (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government.  In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841 and 846 involving RICHARD JACKSON, JAMAL OMARO, and other unidentified subject(s), and evidence of violations of Title 18, United States Code, Sections 922 and 924 involving JACKSON.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE CELLULAR TELEPHONE ASSIGNED CALL<br>NUMBER (347) 600-0378 | )<br>)<br>)  Case No.  20-MC-1105<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____   District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.  This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before     June 2, 2020     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for  30  days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____
                                                                                                       *Judge's signature*

City and state:       Brooklyn, New York                      Hon. Steven M. Gold        U.S.M.J.
                                                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** ||||
|---|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: ||
| Inventory made in the presence of : ||||
| Inventory of the property taken and name of any person(s) seized: ||||

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

*Executing officer's signature*

_____

*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone assigned call number (347) 600-0378, with listed subscriber(s) "Country, Country" (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841 and 846 involving RICHARD JACKSON, JAMAL OMARO, and other unidentified subject(s), and evidence of violations of Title 18, United States Code, Sections 922 and 924 involving JACKSON.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.